IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LEON DAVONNE PHILLIPS, 1250525, ) <br>     Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> NATHANIEL QUARTERMAN, ) <br> Director TDCJ-CID, ) <br>     Respondent. ) | No. 3:07-CV-557-G <br> ECF |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636 (b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS**

**I.     NATURE OF THE CASE**

Petitioner is an inmate in the Texas Department of Criminal Justice, Institutional Division ("TDCJ-CID"). He filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent Nathaniel Quarterman is Director of the TDCJ-CID.

**II.    PROCEDURAL BACKGROUND**

On July 23, 2004, Petitioner was found guilty of murder and was sentenced to life in prison. *State of Texas v. Leon Davonne Phillips*, No. F-0357077-PR (265th Dist. Ct., Dallas

County, Tex., July 23, 2004). On April 14, 2005, the Fifth District Court of Appeals affirmed Petitioner's conviction. *Phillips v. State*, No. 05-04-01109-CR (Tex. App.– Dallas, Apr. 14, 2005). On July 27, 2005, the Court of Criminal Appeals denied Petitioner's petition for discretionary review. *Phillips v. State*, PDR No. 0741-05.

On September 27, 2005, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Phillips*, Application No. 63,569-01. On April 26, 2006, the Texas Court of Criminal Appeals denied the petition without written order on the findings of the trial court. *Id*. at cover.

On March 26, 2007, Petitioner filed this federal petition for writ of habeas corpus. He argues:

(1) he received ineffective assistance of counsel when counsel failed to investigate Petitioner's alibi defense, or present evidence of his alibi at trial;

(2) his conviction is a result of an illegal search and seizure;

(3) the prosecutor committed misconduct when he:

    (a) improperly commented on Petitioner's failure to testify; and

    (b) improperly failed to disclose exculpatory evidence;

(4) the evidence was insufficient to support the verdict;

(5) the trial court erred when it:

    (a) failed to declare a mistrial based on the prosecutor's misconduct; and

    (b) allowed the defense to make its closing argument before the state.

On July 16, 2007, Respondent filed his response. On September 7, 2007, Petitioner filed a traverse. The Court now finds the petition should be denied.

## III. FACTUAL BACKGROUND

During the early morning hours of October 30, 2003, Sania Freeman and Victoria Gray walked to Petitioner's apartment. (Tr. Vol. 5 at 114-115). Freeman told Gray that she wanted to see if she could get "something" on credit. (*Id*. at 115). They knocked on Petitioner's back window and he opened it. (*Id*. at 116). Gray saw a short-barreled shotgun next to Petitioner's right leg. (*Id*. at 117). Freeman began talking to Petitioner and Gray left to deliver a bag of cans to another friend in the apartment complex. (*Id*. at 150-51). A few minutes later, Freeman found Gray and borrowed her lighter. (*Id*. at 152). Freeman then went back to Petitioner's apartment window. (*Id*. at 152). Gray then heard loud voices coming from Freeman and Petitioner. (*Id*. at 153).

Gray left the apartment complex to find a cigarette. (*Id*. at 153). She realized, however, that Freeman had her lighter, so returned to the complex. *Id*. On her return, she heard a backfire sound from the area of Phillips' window. (*Id*. at 155). Gray walked towards the area and saw Phillips dragging something behind his car. (*Id*. at 156). She got into a better position to see Phillips and saw that he was laying on top of Freeman's body. (*Id*. at 159-60). Gray then kept walking and left the apartments. (*Id*. at 160). Later that morning, she went back to the apartments to make sure the body was Freeman, then called 911. (*Id*. at 165-66).

Police were dispatched to the scene around 6:30 a.m. (*Id*. at 16). They arrived to find Freeman dead behind a dumpster not far from Petitioner's apartment. (*Id*. at 20, 23-26; Trial Tr. Vol. 6 at 170). She had a shotgun wound to her neck and her purse had been thrown in the dumpster. (Trial Tr. Vol. 5 at 25, 45-46). A trail of blood led from near a car in the parking lot to the area behind the dumpster. (*Id*. at 19, 44). A shotgun wadding was found in the area and

blood spatter was seen on the nearby car. (*Id*. at 50, 59, 63-64). Blood was also seen on Petitioner's bedroom window. (*Id*. at 69-70).

Police contacted Petitioner and he consented to a search of his apartment. (*Id*. at 27-30). Inside Petitioner's bathroom police found a pair of damp blue jeans hanging from the showerhead. (*Id*. at 74). Blood residue was seen inside Petitioner's shower. (*Id*. at 77). They also located blood on the doorjamb of Petitioner's bathroom. (*Id.* at 74). A shotgun and several rounds of No. 4 and No. 8 shotgun ammunition were located inside Petitioner's closet. (*Id*. at 83, 174).

An autopsy revealed that Freeman died from a shotgun wound to the neck. (Trial Tr. Vol. 6 at 9). There were scrapes and scratches on her body consistent with having been dragged. (*Id*. at 20-23). During the autopsy, several No. 8 shotgun pellets were recovered from the wound to Freeman's neck. (Trial Tr. Vol. 5 at 197; Trial Tr. Vol. 6 at 13).

DNA testing was performed on the jeans found in Petitioner's bathroom, as well as the blood samples taken from the car, Petitioner's doorjamb, and Petitioner's window. (Trial Tr. Vol. 6 at 51-57). DNA taken from the jeans produced a mixture of both Petitioner's and Freeman's DNA. (*Id*. at 62-63). The blood on Petitioner's window, as well as on the car, matched Freeman's DNA. (*Id*. at 71). The blood found on Petitioner's doorjamb produced a mixture of both Freeman's and Petitioner's DNA, as well as a third trace level marker that did not match either individual. (*Id*. at 72-75).

## IV. DISCUSSION

### A. Procedural Bar

Respondent argues that Petitioner's claims that (1) the prosecutor committed misconduct when he failed to disclose exculpatory evidence; and (2) the trial court erred in allowing the defense to make its closing argument before the defense, are procedurally barred because Petitioner did not raise these claims in his PDR or in his state habeas petition.

A federal court will ordinarily not review a claim where a petitioner has not presented his claim to the highest court of the state and the state court to which he would be required to present his claims would now find the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991).

The record reflects that Petitioner failed to raise these claims in either his PDR or his state habeas petition. Although Petitioner argues the claims were included in his state habeas double jeopardy claim, a review of that claim shows that Petitioner failed to raise these issues. Accordingly, the Texas Court of Criminal Appeals has not reviewed the claims. The claims cannot be reviewed by a state court because it is too late to file a petition for discretionary review. If this Court were to require Petitioner to return to state court to exhaust these claims, they would be subject to dismissal.

To overcome the procedural bar established by the abuse-of-the-writ doctrine, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing

*Coleman*, 501 U.S. at 750). Petitioner has not shown sufficient cause for his failure to present these claims to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup*, 513 U.S. at 327). Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him. Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on Petitioner's claims that (1) the prosecutor committed misconduct when he failed to disclose exculpatory evidence; and (2) the trial court erred in allowing the defense to make its closing argument before the defense.

Likewise, Respondent argues Petitioner's claims that (1) his conviction was the result of an illegal search and seizure; and (2) the evidence was insufficient to support the conviction, are procedurally barred from federal review because the state court's denial of these claims was based on a procedural bar. When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *Coleman*, 501 U.S. at 729-31; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge -Page 6**

In this case, the state habeas court found that Petitioner's search and seizure claim was procedurally barred because he failed to raise the claim on direct review. *Ex parte Phillips* at 39-41. The state court also found Petitioner's sufficiency of the evidence claim procedurally barred because he failed to raise the claim on direct appeal. *Id*.

Petitioner has failed to overcome the procedural bar by showing: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider his claims will result in a fundamental miscarriage of justice. Accordingly, the procedural default doctrine bars federal habeas relief on these claims.

**B.     Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254, provide:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U.S.C.A. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 307.

This amendment applies to all federal habeas corpus petitions which were filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2049, 138 L. Ed. 2d 481 (1997). The petition in this case is subject to review under the AEDPA.

C.      **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel because counsel failed to investigate Petitioner's alibi defense or present alibi evidence at trial. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant

must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

In this case, Petitioner argues his counsel failed to investigate his alibi defense and failed to prevent evidence of his alibi defense at trial. Petitioner argues his counsel should have admitted into evidence the written statement that he gave to police. In his statement, Petitioner claimed that on the night of the incident, Freeman came by his apartment, but he told her he was sleepy and she did not come in. He stated he then went to bed and that ten or fifteen minutes later he heard a loud "boom" outside his window. He states he saw an unknown man pull Freeman's body to the dumpster. He states that a few minutes later, he went outside and saw blood on his bedroom window. He claimed that he was afraid people would suspect that he was involved in the crime if they saw the blood, so he cleaned the blood off the window and the brick part of the apartment building. While cleaning the blood, he got some of it on his jeans and had to wash the jeans out. He states he did not call the police because he panicked. (State's Exhibit No. 70).

On state habeas review, defense counsel submitted an affidavit stating that he investigated Petitioner's alibi defense. Counsel stated his investigator was unable to locate any witness to assist the defense. *Ex parte Phillips* at 44. Counsel stated he later accompanied the investigator in an attempt to locate helpful witnesses. Counsel and the investigator were unable to locate any witnesses "who could assist us with alibi or any other positive defensive position." *Id.* Defense counsel also stated he did not seek to admit Petitioner's police statement because the statement "was not helpful to us." *Id.*

**Findings, Conclusions and Recommendation
of the United States Magistrate Judge -Page 9**

Petitioner has submitted no evidence that any witness would have testified favorably for the defense. His claims that his counsel was ineffective for failing to investigate potential witnesses or present witnesses at trial is therefore conclusory and should be denied. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings). Further, defense counsel found that Petitioner's police statement did not benefit the defense. Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). Petitioner's claims of ineffective assistance of counsel should be denied.

D.     **Prosecutorial Misconduct**

Petitioner argues the prosecutor committed misconduct because he commented on Petitioner's failure to testify.

Prosecutorial misconduct implicates due process concerns. *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). When a petitioner asserts a due process violation, the Court must determine whether the prosecutorial comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly,* 416 U.S. at 642).

When alleged prosecutorial misconduct implicates a constitutional right, such as the right to remain silent, courts must determine whether the prosecutor's statement was "manifestly intended or was of such character that a jury would naturally and necessarily take it to be a

comment on the failure of the accused to testify." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). If the prosecutorial misconduct is constitutional error under this test, the court must then determine whether the error is harmless. *Id*. "A comment regarding a defendant's Fifth Amendment rights must have a clear effect on the jury before reversal is warranted." *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990).

> In this case, Petitioner complains about the prosecutor's following comments:
>
> Let's talk about the statement for just a second, folks. Detective Trevino told you, he writes down whatever the man tells him to write. It doesn't mean it's a true statement. Doesn't mean it's the truth. And what did he tell you? He told you from the witness stand that the defendant gave him several versions, folks, before he finally wrote something down. I'm not going to introduce the statements to you all that has nothing to do with the evidence, if it doesn't fit with the evidence. What purpose would that serve to do that, to give him a chance to give an alibi statement that doesn't fit with physical evidence?

(Tr. Vol. 7 at 36).

Under Texas law, proper jury argument includes: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Cobble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993) (citations omitted).

In this case, the prosecutor's statements do not appear manifestly intended to be taken by the jury as a comment on the failure of Petitioner to testify, nor were they of such a character that a jury would naturally and necessarily take them to be a comment on Petitioner's failure to testify. The comments instead appear to be made to rebut statements made in defense counsel's closing argument. Defense counsel argued that Petitioner had cooperated with law enforcement, and that this cooperation helped to show that he was not guilty of the murder. In showing that

Petitioner was cooperative, and thereby not guilty, defense counsel stated that he gave police a voluntary statement. (Trial Tr. Vol. 7 at 30). Petitioner has failed to show the prosecutor committed misconduct in rebutting defense counsel's closing arguments.

**E.     Trial Error**

Petitioner argues the trial court committed error when it failed to declare a mistrial after the prosecutor allegedly commented on Petitioner's failure to testify. As discussed above, the prosecutor did not commit misconduct. Petitioner's claim should therefore be denied.

**F.     Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**<u>RECOMMENDATION:</u>**

For the foregoing reasons, the Court recommends that Petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254 be denied with prejudice.

Signed this 2nd day of July, 2008.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on Plaintiff by mailing a copy to him by United States Mail. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a de novo determination by the District Court. See Thomas v. Arn, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).